☑ Original



**CLERK'S OFFICE**
**A TRUE COPY**
**Dec 22, 2022**
**s/ D. Olszewski**

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   22   MJ   215 |
| information associated with a certain cellular telephone associated with International Mobile Subscriber Identity / Mobile Equipment Identifiers: 310260709739465; 31024013631855; and 31026087383166, which are stored at premises controlled by T-Mobile ("the Provider"), a wireless telephone service provider headquartered in Parsippany, New Jersey | ) ) ) ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before       1/5/2023       *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to       Honorable William E. Duffin       .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:       12/22/2022 at 4:48 PM

*William E. Duffin*
*Judge's signature*

City and state:   Milwaukee, WI

Honorable William E. Duffin
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with a certain cellular telephone associated with International Mobile Subscriber Identity / Mobile Equipment Identifiers: 310260709739465; 310240136531855; and 310260873838166, which are stored at premises controlled by T-Mobile ("the Provider"), a wireless telephone service provider headquartered in Parsippany, New Jersey.

# ATTACHMENT B

## Particular Things to be Seized

## I.    Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Target Accounts listed in Attachment A for the time period of **December 8, 2022, through December 10, 2022:**

a. The following subscriber and extended subscriber information about the customers or subscribers of the Target Accounts:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"); device make and model;

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Accounts, including:

   i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers); call detail records for voice, SMS, MMS, and data; email addresses and IP addresses (including source and destination); and

   ii. information regarding the cell towers and sectors through which the communications were sent and received; and

   iii. per call measurement and timing advance data (PCMD, RTT, True Call, LOCDBOR, or similar)

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, Sections 1114 and 2(a) and Title 21, United States Code, Sections 841(a)(1) and 846, involving **Kevin McCaa and Shanelle McCoy** during the period December 8, 2022, through December 10, 2022.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Dec 22, 2022
s/ D. Olszewski

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

information associated with a certain cellular telephone associated with International Mobile Subscriber Identity / Mobile Equipment Identifiers: 310260709739465; 310240136531855; and 310260873838166, which are stored at premises controlled by T-Mobile ("the Provider"), a wireless telephone service provider headquartered in Parsippany, New Jersey

)
)
)
)
)
)
)

Case No. 22 MJ 215

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1114 and 2(a) | Murder of a USPS letter carrier |
| 21 U.S.C. §§ 841(a)(1) and 846 | Drug Trafficking |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Inspector Kimbery Lincoln, USPIS

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date: __12/22/2022__

_____
*Judge's signature*

City and state: Milwaukee, WI

Honorable William E. Duffin, U.S Magistrate Judge

*Printed name and title*

# AFFIDAVIT IN SUPPORT OF A
## AN APPLICATION FOR A SEARCH WARRANT

I, Kimberly Lincoln, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with International Mobile Subscriber Identity / Mobile Equipment Identifiers: 310260709739465; 310240136531855; and 310260873838166, hereinafter referred to as the "Target Accounts."  The information is stored at premises controlled by T-Mobile ("PROVIDER"), a wireless telephone service provider headquartered at Parsippany, New Jersey. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I am a United States Postal Inspector, assigned to the United States Postal Inspection Service ("USPIS") Domicile in Milwaukee, Wisconsin.  I have been a law enforcement officer for eleven years. From September 2011 to August 2021, I served as a law enforcement officer in the state of Illinois and from August 2021 to the present day, with the USPIS.

3.      As part of my duties as a USPIS Postal Inspector, I investigate criminal violations of federal law, including violent crimes committed against United States Postal employees.  I have participated in the execution of multiple arrests and search warrants.

4.      The USPIS is the primary investigative arm of the United States Postal Service ("USPS") and is charged under Title 18, United States Code, 3061 with the enforcement of laws

governing the use and movement of the United States Mail, including the misuse and fraudulent schemes involving the mail, crimes relating to mail fraud, narcotics trafficking, identity theft involving the United States Mail, and crimes of violence committed against USPS employees.

5. I have investigated and assisted in numerous violent crimes investigations in my eleven years of law enforcement experience and received continual training in that and other fields. Since December 2021, I have been assigned to the USPIS's Milwaukee multifunction team charged with investigating violations of federal law, including robberies, burglaries, assaults, homicides, and other violent crime matters. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search warrants, cellular telephone extractions, vehicle processing, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

6. This affidavit is based upon my personal knowledge, training, and experience, and on information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon police reports, official records, witness statements, recorded statements, surveillance video, and public records which I consider to be reliable as set forth herein.

7. This affidavit is submitted for the limited purpose of obtaining a search warrant, therefore, I have not included each and every fact known to me concerning this investigation. I have attempted to set forth only the facts that I believe are pertinent to establishing the necessary foundation for the search warrant.

8. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1114 and 2(a) (murder of a USPS letter carrier) and 21 U.S.C. §§

841(a)(1) and 846 (drug trafficking) have been committed by Kevin McCaa ("McCaa"), the subscriber of Subject Phone 1 and Subject Phone 3, Shanelle McCoy, the subscriber of Subject Phone 2, and others. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## **PROBABLE CAUSE**

9.    The USPIS, the Milwaukee Police Department ("MPD"), and the Federal Bureau of Investigation ("FBI") are currently investigating the homicide of a USPS letter carrier (the "Victim") ("Subject Offense"), which occurred on December 9, 2022, at approximately 4:38 p.m., at 5029 North 65th Street, in Milwaukee, Wisconsin ("Subject Location"). Around that date and time, the Victim sustained a fatal injury as a result of a single gunshot to the head.

10.    Based on the investigation to date, which includes a review of surveillance footage from the area of the Subject Location around the time of the shooting, law enforcement believes that the occupants of a silver-colored Audi Q5 SUV vehicle, believed to be a 2008-2012 model, with tinted windows and no visible front or rear license plates, were involved in the shooting.

11.    Law enforcement obtained and reviewed video surveillance footage from multiple residential surveillance cameras in the vicinity of the shooting. At approximately 3:35 p.m., video footage obtained from a residence located on the 6400 block of West Stark Street showed the silver Audi Q5 SUV vehicle traveling eastbound on West Stark Street from the direction of the 6500 block of West Stark Street and subsequently turning northbound on the 4900 block of North 64th Street out of view.  At approximately 3:38 p.m., the video footage further showed the silver Audi Q5 SUV vehicle traveling southbound on the 4900 block of North 65th Street and proceed to park in the area of approximately 4901 North 65th Street, where it remained stationary.  At approximately 3:51 p.m., the video footage showed the silver Audi Q5 SUV vehicle pull off traveling southbound on North 65th Street and subsequently turn westbound onto West Stark Street

before appearing to turn northbound onto North 66th Street out of view. At approximately 3:55 p.m., the video footage showed the silver Audi Q5 SUV vehicle traveling eastbound on West Stark Street before turning southbound on the 4800 block of North 65th Street out of camera view.

12.     At approximately 3:57 p.m., video footage obtained from the residence located on the 6400 block of West Stark Street showed the USPS delivery vehicle, driven by the Victim, travel northbound on the 4800 block of North 65th Street and park in front of the residence on the southeast intersection of North 65th Street and West Stark Street. At approximately 4:00 p.m., while the Victim is shown appearing to retrieve mail from the rear of the USPS delivery vehicle, video footage further showed the silver Audi Q5 SUV vehicle traveling southbound on the 4900 block of North 65th Street and turning westbound at the intersection with West Stark Street, which is across the intersection from the location of the Victim.

13.     At approximately 4:02 p.m., video footage obtained from a residence located on the 5000 block of North 65th Street showed the silver Audi Q5 SUV vehicle traveling southbound in the alley on the same block between North 65th Street and North 64th Street. Video footage obtained from a residence located further south on the 5000 block of North 65th Street showed the silver Audi Q5 SUV vehicle continuing to travel further southbound in the alley and briefly pausing near the yard area between 5018 North 65th Street and 5026 North 65th Street, located across the street from the Subject Location, before continuing southbound out of view.

14.     At approximately 4:02 p.m., video footage obtained from the residence located on the 6400 block of West Stark Street showed the silver Audi Q5 SUV vehicle exit the alley, travel eastbound on West Stark Street, and turn northbound onto the 4900 block of North 64th Street out of view.

15.     At approximately 4:15 p.m., video footage obtained from the residence located on the 6400 block of West Stark Street showed the Victim returning to the USPS delivery vehicle

parked near the southeast intersection of North 65th Street and West Stark Street, and the Victim entered the driver's seat and then appeared to retrieve mail out of the rear of the vehicle. At approximately 4:17 p.m., the Victim is shown walking away from the USPS delivery vehicle in the direction of the intersection of North 65th Street and West Stark Street out of view. At approximately 4:23 p.m., the silver Audi Q5 SUV vehicle is shown traveling southbound on the 4900 block of North 64th Street, turning westbound on West Stark Street, and then turning northbound into the alley located between North 65th Street and North 64th Street out of view.

16. At approximately 4:27 p.m., video footage obtained from the residence located on the 6400 block of West Stark Street showed the Victim returning to the USPS delivery vehicle, which then departs traveling northbound onto the 4900 block of North 65th Street out of view at approximately 4:28 p.m. At approximately 4:29 p.m., video footage obtained from a residence located on the 5000 block of North 65th Street showed the USPS delivery vehicle, driven by the Victim, travel northbound onto the block and park in front of the area of approximately 5050 North 65th Street.

17. At approximately 4:37 p.m., surveillance video footage obtained from a residence located on the 5000 block of North 65th Street, located across the street from the Subject Location, showed the silver Audi Q5 SUV vehicle parked facing northbound in the alley between North 65th Street and North 64th Street, between approximately 5018 North 65th Street and 5026 North 65th Street. At approximately 4:38 p.m., an individual ("Suspect A") is shown walking from the area of the silver Audi Q5 SUV vehicle westbound through a yard in the direction of the Subject Location.

18. At approximately 4:38 p.m., video footage obtained from a residence located on the 5000 block of North 65th Street showed the Victim approaching the Subject Location while an individual, similar in appearance to Suspect A, walking from the direction of the silver Audi Q5

SUV vehicle, and standing across the street from the Subject Location. Suspect A then crossed the street and approached the Victim from behind, at which point a gunshot can be heard on the footage. Suspect A then proceeded to run across the street through the same yard in the direction of the silver Audi Q5 SUV vehicle. At approximately 4:38 p.m., after the audio of the gunshot, Suspect A is shown running to the direction of and approaching the rear passenger area of the silver Audi Q5 SUV vehicle. The video footage further showed the silver Audi Q5 SUV vehicle traveling northbound in the alley between North 65th Street and North 64th Street at high rate of speed.

19.     At approximately 4:40 p.m., surveillance video footage obtained from a gas station located at the intersection of North 60th Street and West Villard Avenue showed the silver Audi Q5 SUV vehicle traveling eastbound on West Villard Avenue and further turning southbound on North 60th Street out of view.

20.     Surveillance video footage obtained from a residence located on the 5800 block of West Parkway Drive further showed the silver Audi Q5 SUV vehicle traveling southbound on North 60th Street before turning southeast on West Parkway Drive and continuing out of view. At approximately 4:42 p.m., surveillance video footage obtained from a residence located on the 4500 block of North 50th Street showed silver Audi Q5 SUV vehicle traveling southeast on West Parkway Drive and continuing out of view. Surveillance video footage obtained from a residence located on the 4400 North block of 48th Street showed the silver Audi Q5 SUV vehicle continuing to travel southeast on West Parkway Drive and stop in the area of a pedestrian bridge located on the southside of West Parkway Drive near the intersection with North 49th Street. An individual is observed walking from the area of the silver Audi Q5 SUV vehicle on foot in the direction of the pedestrian bridge and continuing out of view. The silver Audi Q5 SUV vehicle then is shown further traveling southeast on West Parkway Drive and turning northbound on North 48th Street

continuing out of view. At approximately 4:43 p.m., surveillance video footage obtained from a residence located on 4500 block of North 46th Street showed the silver Audi Q5 SUV vehicle traveling eastbound on West Glendale Avenue.

21.     On Monday, December 12, 2022, at approximately 7:19 a.m., officers identified a silver-colored 2009 Audi Q5 SUV vehicle with WI Plate APD-9158 ("Target Vehicle") parked on the street in front of the approximate area of 8517 West Grantosa Drive, the registered address for the Target Vehicle. This location is 1.5 miles from the scene of the homicide. The appearance of the Target Vehicle matched all the characteristics of the silver-colored Audi Q5 vehicle involved with the homicide, including the design of the wheels, the slightly darker looking front wheel rims, the front grill and fog lamps, and the license plate areas.  Law enforcement officers reviewed both an Automatic License Plate Reader (ALPR) database and FLOCK images of the Target Vehicle. The information in those databases reflects that in the days prior to the homicide, the Target Vehicle traveled in the Milwaukee area with the front and rear license plates in the correct placement.  These databases indicated that the rear license plate, with the registration sticker, of the Target Vehicle had the registration sticker properly placed on the rear license plate of the vehicle from multiple images on November 28, 2022, December 8, 2022, and December 9, 2022, at approximately 12:45 a.m. and 1:12 a.m.  Additionally, on December 9, 2022, at approximately 12:45 a.m. and 1:12 a.m., an ALPR camera took photos of the front of the Target Vehicle's front license plate showing that a license plate with no registration sticker was properly attached to the front of the Target Vehicle.

22.     When MPD Police Officers located the Target Vehicle on December 12, 2022, the license plate with the registration sticker was affixed to the front of the vehicle.  The front and rear license plates appeared to be reversed.  Further investigation revealed the registered owner of the Target Vehicle was Shanelle M. McCoy (XX/XX/1988) at 8517 West Grantosa Drive, #2, in

Milwaukee. As of today's date, Wisconsin Department of Transportation records list this as McCoy's residence.

 



*Target Vehicle at 8517 West Grantosa Drive on December 12, 2022*

23.     On December 12, 2022, Shanelle M. McCoy (McCoy) was interviewed outside her residence.  In summary, McCoy stated she was in possession of the Target Vehicle for the entire day of the Subject Offense (December 9, 2022) and that she drove the Target Vehicle while making deliveries for DoorDash.  McCoy, using a cellular device, presented the interviewing officers with her DoorDash logs for December 9, 2022, which indicated she first logged in at approximately 12:03 a.m. and last logged out at approximately 10:55 p.m.

24.     McCoy initially provided consent for law enforcement to search the Target Vehicle, but then subsequently rescinded the consent. McCoy had no explanation as to how, why, or when her registration plates were switched. The Target Vehicle was towed to the City of Milwaukee Tow Lot for processing including the collection of possible fingerprints and DNA and for the

examination of the vehicles "infotainment" system.  Prior to departing, McCoy provided MPD officers with her telephone number, Subject Phone 2, (414) 399-9757.

25.     On December 18, 2022, at approximately 12:05 a.m., McCoy contacted the MPD to inquire about the status of the Target Vehicle using Subject Phone 2.  Later on December 18, 2022, at approximately 2:57 p.m., MPD officers contacted McCoy at Subject Phone 2, (414) 399-9757, to update her on the status of the Target Vehicle.

26.     Surveillance footage obtained over the course of the investigation indicates McCoy was not driving the Target Vehicle between approximately 4:20 p.m. and approximately 7:59 p.m. on the day of the Subject Offense (December 9, 2022).  Instead, the surveillance footage shows that McCoy was driving a silver 2006 Acura RL sedan during the time of the Subject Offense. Investigation revealed the silver 2006 Acura RL is registered to Charles Ducksworth at 4725 North 39th Street, Milwaukee, Wisconsin.  According to surveillance footage, McCoy, at some point, began resuming her use of the Target Vehicle for DoorDash deliveries, including one at 4101 North 76th Street, Milwaukee, Wisconsin, at approximately 10:05 p.m.  At that point, the footage shows that the license plates were back on the Target Vehicle, but not properly affixed.  The rear license plate with registration stickers was affixed to the front of the vehicle, consistent with how the license plates were affixed when the vehicle was recovered on December 12, 2022.

27.     Law enforcement obtained surveillance footage from the 8500 block of West Grantosa Drive, which captures activity outside the residence.  The Target Vehicle was captured in this footage at several points on December 9, 2022.  On December 9, 2022, at approximately 2:07 a.m., a female subject, appearing to be McCoy, is seen exiting the driver's seat of the Target Vehicle and walk toward her residence on Grantosa.  An unknown suspect exits the front passenger door of the Target Vehicle and also walks towards the McCoy's residence, as shown below.  The

unknown suspect is wearing a top/sweatshirt and dark colored pants, which bear a resemblance to the top/sweatshirt and pants worn by Suspect A at the scene of the homicide on December 9, 2022.



*Target Vehicle and Unknown Suspect on December 9, 2022, at 2:07 a.m. outside Grantosa residence.*

28. Surveillance footage obtained from 8500 block of West Grantosa Drive showed an unknown suspect entering the Target Vehicle on December 9, 2022, at approximately 2:42 p.m. A review of the surveillance footage revealed this unknown suspect, wearing a top/sweatshirt and dark colored pants that bear a resemblance to the top/sweatshirt and pants worn by Suspect A at the scene of the homicide on December 9, 2022. The unknown suspect drives the Target Vehicle away and returns, at approximately 2:47 p.m., to the same area it was originally parked. At this time, a female subject who appears to be Shanelle McCoy, exits the front door of the Grantosa residence. McCoy enters the front passenger seat of the Target Vehicle and the vehicle is driven away out of view of the surveillance cameras.



*Unknown Suspect approaching driver's area of Target Vehicle on December 9, 2022, at 2:42 p.m. outside Grantosa residence*



*McCoy approaching passenger area of Target Vehicle outside Grantosa residence on December 9, 2022, at approximately 2:47 p.m.*



*Surveillance video showing Suspect A on scene of homicide next to Target Vehicle.*

29.     On Thursday, December 15, 2022, law enforcement executed a federal search

warrant of the Target Vehicle.  A latent print obtained from the interior glass sunroof above the

driver's seat area of the Target Vehicle was examined and a Latent Print Examiner determined that

the source of the print was Kevin McCaa.

30.     Previously, on June 8, 2022, MPD officers responded to a "wanted subject" call at

the Grantosa residence.  The caller indicated that McCaa, who had an active arrest warrant, was at

that address and was possibly in a silver Audi Q5 SUV vehicle with license plate APD-9158

(Target Vehicle). The caller indicated that the Target Vehicle was parked outside the residence. When officers responded to the Grantosa residence in June 2022, they were unable to locate McCaa or the Target Vehicle.

31.     McCaa is currently charged in two open cases in Milwaukee County Circuit Court and has posted cash bond in both cases. In case number 2022CF002487, McCaa is charged with First Degree Recklessly Endangering Safety (shooting), Second Degree Recklessly Endangering Safety, Possess Firearm-Convicted of a Felony, Bail Jumping-Felony, and Possession of Methamphetamine. The allegations in that case reflect that McCaa discharged a rifle at multiple people striking a 15-year o In case number 2021CF004865, McCaa is charged with Second Degree Recklessly Endangering Safety, Possess Firearm-Convicted of a Felony, and Vehicle Operator Flee/Elude Officer.

32.     On June 23, 2022, following a court appearance, McCaa was arrested for one of his two open cases in Milwaukee County Circuit Court. At the time of his arrest, MPD records indicate that McCaa provided telephone number (414) 366-3872. According to T-Mobile, this telephone number is an unregistered telephone number. According to JusticePoint, a local non-profit that administers pretrial services, McCaa provided a third telephone number (414) 839-2869 (Subject Phone 3). According to T-Mobile, Subject Phone 3 is subscribed to Kevin McCaa.

33.     Records maintained by the Milwaukee County Sheriff's Office indicate that on June 27, 2022, McCoy posted $15,000 cash bail for McCaa (as to Case No. 2022CF002487).

**McCaa's Suspected Involvement in Mailed Narcotics**

34.     Following the Subject Offense, Postal Inspectors reviewed USPS business records and identified suspect parcels scanned by the Victim as part of his duties as a USPS letter carrier. One suspect parcel bore tracking number 9405511206223897528809 (Subject Parcel #1) and was addressed to "Larry Ducksworth" at 6414 West Hampton Avenue, Milwaukee, Wisconsin 53218.

35.     Postal Inspectors, through their review of USPS business records, linked Subject Parcel #1 to a second suspect parcel bearing tracking number 9405511206223897528892 (Subject Parcel #2) and addressed to "Jay Thompson" at 4538 West Eggert Place, Lower Unit, Milwaukee, Wisconsin 53218.  Milwaukee County Circuit Court records list Kevin McCaa's address as 4532 West Eggert Place, which is next door to the destination address for Subject Parcel #2.

36.     According to a review of a law enforcement database, the listed recipient last names for Subject Parcel #1 and Subject Parcel #2 both associate to the respective recipient addresses; however, the listed first names do not associate. Additionally, the listed addresses utilized for the sender information for Subject Parcel #1 and Subject Parcel #2 are both associated with different business locations in Los Angeles, California. Based on my training and experience, fictitious sender or receiver names, and fictitious return addresses, can indicate that the sender or receiver does not want to be associated with drug-laden parcels.

37.     According to USPS business records, the mailing labels for Subject Parcel #1 and Subject Parcel #2 were both created at the same date and time: November 30, 2022, at approximately 10:34 p.m.  Both Subject Parcel #1 and Subject Parcel #2 share the same weight, postage, parcel dimensions, and origin/destination zip codes.  Further, both Subject Parcel #1 and Subject Parcel #2 were mailed from Los Angeles, California, 90012 on November 30, 2022, with their respective postage paid for using cryptocurrency.

38.     Based on my training and experience, a sender paying for postage with cryptocurrency may indicate the sender does not want to associate with the parcel.  Additionally, drug-traffickers will routinely mail more than one parcel containing narcotics in an effort to avoid detection.  Multiple drug parcels mailed at the same time, likely from the same mailer, are commonly referred to as "sister parcels."  Sister parcels, based on my training and experience, may display many of the same parcel characteristics: including weight, postage, parcel dimensions,

shipping labels, and origin/destination areas. California is also a known source-state for illegal drug-trafficking. The Los Angeles High Intensity Drug Trafficking Area (LA HIDTA) was one of the original five HIDTA regions designated as a "Drug Trafficking Gateway."

39.     According to USPS business records, Subject Parcel #1 was scanned by the Victim on December 2, 2022, at approximately 8:29 p.m. as, "Delivery Attempted – No Access to Delivery Location." USPS business records indicate the scan occurred in the vicinity of North 77th Street and West Carmen Avenue, Milwaukee, Wisconsin, which is approximately one and a half miles away from the delivery address (6414 West Hampton Avenue, Milwaukee, Wisconsin, 53218). Following the Subject Offense, Postal Inspectors visited the Victim's assigned USPS post office and were unable to locate Subject Parcel #1. Based on my training and experience, Subject Parcel #1 being scanned as "Delivery Attempted – No Access to Delivery Location," combined with evidence it was not returned to its original USPS delivery unit, can indicate the Victim retained Subject Parcel #1 for his own, or someone else's, benefit.

40.     On December 3, 2022, USPS business records indicate that the tracking number for Subject Parcel #1 was queried on USPS.com and a customer requested Short Message Service (SMS) text delivery notifications for the parcel be sent to telephone number (262) 683-2033 (Subject Phone 4). Subscriber information obtained from T-Mobile revealed Subject Phone 4 is subscribed to "Virginia Thomas."

41.     Also on December 3, 2022, USPS business records indicate that the tracking number for Subject Parcel #2 was queried on USPS.com and a customer requested Short Message Service (SMS) text delivery notifications for the parcel be sent to Subject Phone 1, (414) 975-4685. Subscriber information obtained from T-Mobile revealed Subject Phone 1 is registered to Kevin McCaa.

**McCaa's Telephone Calls on Date of Subject Offense (December 9, 2022)**

42.     According to T-Mobile, Subject Phone 1 and Subject Phone 3, which T-Mobile records indicate are both registered to McCaa, conducted thirteen total telephone contacts with McCoy, Subject Phone 2, (414) 399-9757, on the day of the Subject Offense:

| Call # | Subject Phone # | Date | Approximate Time | Incoming/Outgoing |
|---|---|---|---|---|
| 1 | 414-975-4685 | 12/09/22 | 1:32 a.m. | Outgoing |
| 2 | 414-975-4685 | 12/09/22 | 1:33 a.m. | Outgoing |
| 3 | 414-975-4685 | 12/09/22 | 2:45 p.m. | Incoming |
| 4 | 414-975-4685 | 12/09/22 | 3:28 p.m. | Outgoing |
| 5 | 414-975-4685 | 12/09/22 | 3:42 p.m. | Incoming |
| **Subject Offense: 12/09/22 @ 4:38 p.m.** | | | | |
| 6 | 414-839-2869 | 12/09/22 | 4:59 p.m. | Outgoing |
| 7 | 414-839-2869 | 12/09/22 | 6:48 p.m. | Outgoing |
| 8 | 414-839-2869 | 12/09/22 | 6:56 p.m. | Incoming |
| 9 | 414-839-2869 | 12/09/22 | 7:38 p.m. | Outgoing |
| 10 | 414-839-2869 | 12/09/22 | 7:42 p.m. | Incoming |
| 11 | 414-839-2869 | 12/09/22 | 8:47 p.m. | Incoming |
| 12 | 414-839-2869 | 12/09/22 | 8:59 p.m. | Outgoing |
| 13 | 414-839-2869 | 12/09/22 | 11:20 p.m. | Incoming |

43.     Toll records for Subject Phone 1, (414-975-4685), were obtained from T-Mobile for telephone calls made between November 14, 2022, and December 15, 2022.  According to T-Mobile, the last telephone call on December 9, 2022, the day of the Subject Offense, was received from McCoy, Subject Phone 2, (414) 399-9757, at approximately 3:42 p.m.  Through at least

December 15, 2022, the T-Mobile records indicate Subject Phone 1 made no additional telephone calls.

44.    Toll records for Subject Phone 3, (414-839-2869), were obtained from T-Mobile for telephone calls made between November 14, 2022, and December 15, 2022.  According to T-Mobile, between November 14, 2022, and December 15, 2022, the first telephone call made by Subject Phone 3 was to McCoy, Subject Phone 2, (414) 399-9757, on December 9, 2022, at approximately 4:49 p.m.

45.    Also, according to T-Mobile, Subject Phone 1 conducted eight telephone contacts with Subject Phone 4, (262) 683-2033, which USPS business records indicate was used to track Subject Parcel #1, on the day of the Subject Offense:

| Date | Approximate Time | Incoming/Outgoing |
|------|------------------|-------------------|
| 12/09/22 | 2:38 p.m. | Outgoing |
| 12/09/22 | 2:40 p.m. | Outgoing |
| 12/09/22 | 2:48 p.m. | Outgoing |
| 12/09/22 | 2:49 p.m. | Outgoing |
| 12/09/22 | 2:51 p.m. | Outgoing |
| 12/09/22 | 2:56 p.m. | Incoming |
| 12/09/22 | 3:08 p.m. | Incoming |
| 12/09/22 | 3:08 p.m. | Incoming |

46.    T-Mobile records indicate Subject Phone 1 was also in contact with telephone number (262) 683-2033 (Subject Phone 4) on December 2, 2022, December 3, 2022, and on the days leading up to the Subject Offense.

47.     On December 19, 2022, at approximately 2:30 p.m., MPD officers were conducting a canvas in the area of the pedestrian bridge located on the southside of West Parkway Drive near the intersection of North 49th Street.  MPD Police Officer Jacob Howell located a black Glock 19 Gen 4 9mm semiautomatic handgun, serial number BCRP667, without a magazine, submerged underwater, in the creek to the east of the footbridge leading from Parkway Drive, southwest across the creek.  PO Howell seized the Glock handgun and transferred it into the custody of MPD Detective Alex Klabunde.  Det. Klabunde transported the firearm to the Wisconsin State Crime Lab for analysis.  On December 21, 2022, a firearms and toolmarks analyst at the Crime Lab reported that the recovered Glock firearm was compared to the casing recovered from the scene of the Subject Offense.  The Analyst determined that the casing recovered from the scene of the Subject Offense matches the analysis from the Glock firearm that was recovered from the creek.

48.     On December 21, 2022, the Honorable William E. Duffin signed a search warrant for the historical cell site records for four phone numbers, including the Target Cellular Devices. Those records were returned and analyzed.   A review of the historical call detail records for the phone number 414-975-4685 (Subject Phone 1) reflected that the number was changed on December 9, 2022, to the phone number 414-839-2869 (Subject Phone 3).    Prior to the change, the last outgoing call on phone number 414-975-4685 (Subject 1) was to 414-399-9757 (Subject Phone 2) at approximately 3:28 p.m.  Additionally, after the device was assigned a new number, the first outgoing call with the new number (Subject Phone 3), was at approximately 4:59 p.m. to the same 414-399-9757 phone number (Subject Phone 2).  Furthermore, it was identified that the same cellular device was used when the phone numbers were switched.  At some point between 3:28 p.m. and 4:59 p.m. on December 9, 2022, the device's assigned phone number was switched from Subject Phone 1 to Subject Phone 3.  The homicide occurred at approximately 4:38 p.m.

49.     Furthermore, the location information for both phone numbers Subject Phone 1 and Subject Phone 3, which were either on the network before or after the incident, showed cellular activity consistent with the geographic areas around the known locations.

50.     A review of the historical records for the phone number 414-975-4685 (Subject Phone 1) identified that the records were consistent with being in the geographic area of 8517 West Grantosa Drive, Milwaukee, WI when the vehicle and male individual wearing clothing similar to the shooter/Suspect A were observed outside the Grantosa residence on December 9, 2022, around approximately 2:07 a.m. and 2:47 p.m.

51.     Furthermore, a review of the historical call detail records identified that the phone number 414-839-2869 (Subject Phone 3) attempted to place outgoing calls to 262-683-2033 (Subject Phone 4) on or about December 12, 2022, the day the Audi (Target vehicle) was recovered by law enforcement.  The calls were not connected due to the user of phone number 262-683-2033 (Subject Phone 4) cancelling their phone number on December 9, 2022.  The last outgoing call on Subject Phone 4 was at approximately 3:08 p.m. on December 9, 2022.  That last call placed on Subject Phone 4 was to Subject Phone 1.

52.     On December 14, 2022, and December 19, 2022, search warrants for records associated with a T-Mobile Timing Advance Area Search were authorized and issued for five (5) total locations associated with the investigation.  The locations were obtained through investigation to date including the location of the homicide as well as video surveillance of the Target Vehicle, before, around, and after the homicide.

53.     Upon analyzing the records, account identifiers were reviewed to see the accounts who had records consistent with the general time period and geographic areas referenced above.  Through this analysis, three (3) International Mobile Subscriber Identity (IMSI) were initially identified to have records around the locations and times.  Specifically, the three (3) IMSI

had records contained within multiple of the search areas. The IMSI were identified as 310260709739465, 310240136531855 and 310260873838166, hereinafter referred to as the "Target Accounts."

54. Based on the Target Accounts having records consistent with general times and areas of known locations and video surveillance your affiant believes there is probable cause that additional historical records for the Target Accounts will provide evidence related to the violations being investigated including the user of the devices, the phone number of the accounts, and any locations and travel before and/or after the homicide.

## SUMMARY OF PROBABLE CAUSE

55. As a result of McCaa's association with and connection to the Target Vehicle, Suspect Parcel # 2, and other parcels suspected of containing narcotics, I believe there are reasonable grounds to believe McCaa and McCoy were involved in, or have knowledge of, the homicide of the Victim (Subject Offense) and drug trafficking.

56. Based on my training and experience, I believe that there are reasonable grounds to believe that historical call detail records for the Target Accounts, for the period of December 8, 2022, and December 10, 2022, are relevant and material to the ongoing investigation. Among other things, law enforcement officers can use historical records for IMSIs to analyze the past use of the Target Accounts, and thereby obtain information about the subjects' co-conspirators, associates, and activities, as well as patterns of behavior. In particular, information about the past use of the Target Accounts is likely to enable the government, by matching call details with the cell site information discussed below, to determine McCaa's whereabouts or his possible contact with others, including the Victim and co-conspirators, leading up to, during, and following, the Subject Offenses.

57.     Based on my training and experience, I believe that there is probable cause to believe that historical cell site information for the Target Accounts, for the period from December 8, 2022, through December 10, 2022, will constitute or lead to evidence of the Subject Offenses. Among other things, law enforcement officers can use historical cell site information to analyze the past use of the Target Accounts, and thereby obtain information about the subjects' whereabouts, and activities, as well as patterns of behavior. In particular, information about the past use of the Target Accounts is likely to enable the government to determine the users whereabouts leading up to, during, and following, the Subject Offenses.

58.     In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

59.     Based on my training and experience, I know that T-Mobile can collect cell-site data about the Target Accounts. I also know that wireless providers such as T-Mobile typically

collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

60.     Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify Subject Phone 1's, Subject Phone 2's, Subject Phone 3's, and Subject Phone 4's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

61.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

62.     I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

63.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the

targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with a certain cellular telephone associated with International Mobile Subscriber Identity / Mobile Equipment Identifiers: 310260709739465; 310240136531855; and 310260873838166, which are stored at premises controlled by T-Mobile ("the Provider"), a wireless telephone service provider headquartered in Parsippany, New Jersey.

## ATTACHMENT B

## Particular Things to be Seized

## I.     Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Target Accounts listed in Attachment A for the time period of **December 8, 2022, through December 10, 2022:**

a.  The following subscriber and extended subscriber information about the customers or subscribers of the Target Accounts:

  i.  Names (including subscriber names, user names, and screen names);

  ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

  iii.  Local and long distance telephone connection records;

  iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

  v.  Length of service (including start date) and types of service utilized;

  vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"); device make and model;

  vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Accounts, including:

   i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers); call detail records for voice, SMS, MMS, and data; email addresses and IP addresses (including source and destination); and

   ii. information regarding the cell towers and sectors through which the communications were sent and received; and

   iii. per call measurement and timing advance data (PCMD, RTT, True Call, LOCDBOR, or similar)

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, Sections 1114 and 2(a) and Title 21, United States Code, Sections 841(a)(1) and 846, involving **Kevin McCaa and Shanelle McCoy** during the period December 8, 2022, through December 10, 2022.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC
## RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE
## 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws

of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in

this certification is true and correct.  I am employed by [**PROVIDER**], and my title is

_____.  I am qualified to authenticate the records attached hereto

because I am familiar with how the records were created, managed, stored, and retrieved.  I state

that the records attached hereto are true duplicates of the original records in the custody of

[**PROVIDER**].  The attached records consist of _____ **[GENERALLY DESCRIBE**

**RECORDS (pages/CDs/megabytes)]**.  I further state that:

        a.        all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth by, or from information transmitted by, a person with

knowledge of those matters, they were kept in the ordinary course of the regularly conducted

business activity of **[PROVIDER]**, and they were made by **[PROVIDER]** as a regular practice;

and

        b.        such records were generated by **[PROVIDER'S]** electronic process or system

that produces an accurate result, to wit:

                1.        the records were copied from electronic device(s), storage medium(s), or

file(s) in the custody of **[PROVIDER]** in a manner to ensure that they are true duplicates of the

original records; and

2. the process or system is regularly verified by **[PROVIDER]**, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
Date                                                              Signature